149 So.2d 452 (1963)
Robert YOUNGER, Plaintiff and Appellee,
v.
Ray BONIN et al., Defendants and Appellants.
No. 744.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
Rehearing Denied February 20, 1963.
Certiorari Refused March 25, 1963.
*453 Landry, Watkins, Cousin & Bonin, by William O. Bonin, New Iberia, for defendants-appellants.
Simon & Trice, by J. Minos Simon and Phil Trice, Lafayette, for plaintiff-appellee.
Before TATE, CULPEPPER, and HOOD, Judges.
HOOD, Judge.
This is a tort action instituted by Robert Younger, both individually and for the use and benefit of his minor daughter, Darlene Younger, based on personal injuries sustained by the child when she was struck by an automobile. The suit was instituted against Ray Bonin, Mrs. Jeanette D. Bonin and Lumbermens Mutual Casualty Company, but it was subsequently dismissed on exceptions as to Ray Bonin. The remaining defendants answered, and after trial judgment was rendered (1) in favor of plaintiff, individually, against Mrs. Bonin for $2,044.85, (2) in favor of plaintiff, for the use and benefit of his minor child, against both defendants, in solido, for $5,000.00, and (3) in favor of plaintiff, for the use and benefit of his minor child, and against Mrs. Bonin for the additional sum of $5,000.00. Defendants have appealed.
Plaintiff has answered the appeal demanding that the award for the use and benefit of the child be increased, and that the judgment be amended to decree that Lumbermens Mutual Casualty Company be condemned to pay at least some portion of the amount awarded to plaintiff, individually.
The evidence shows that on April 13, 1959, plaintiff's daughter, Darlene Younger, while crossing Hopkins Street in the city of New Iberia, was struck and seriously injured by an automobile being driven by Mrs. Bonin. The child was nine years of age at the time of the accident. Lumbermens Mutual Casualty Company was the public liability insurer of the automobile under a policy which provided for a bodily injury liability limit of $5,000.00 for each person.
The only eye witnesses to the accident were Mrs. Bonin and the child, and the testimony of each of these parties is so hopelessly in conflict that their differing versions of how it occurred cannot be reconciled. *454 The child states that she was crossing Hopkins Street, from east to west, and that she had almost completed the crossing before she was struck. According to her testimony the point of impact was on the extreme west side of the street. Mrs. Bonin, on the other hand, testified that Darlene stepped out from behind a parked car on the east side of the street, directly in front of the Bonin automobile which was being driven in a northerly direction, and that the right front fender of the car struck the child immediately after she stepped out. Mrs. Bonin maintains that the accident occurred on the extreme east side of Hopkins Street.
The evidence establishes that just prior to the accident Darlene had been sent to a grocery store located on the east side of Hopkins Street for a box of washing powder and a bottle of Purex. She obtained these items and in returning to her home with them she was crossing the street, from east to west, when the accident occurred. Mrs. Bonin at that time was driving in a northerly direction at a speed of 20 or 25 miles per hour. Immediately after the accident, the injured child was found lying on the extreme western edge of the street, and the box of washing powder and the broken bottle of Purex were found within a foot or two of her. Mrs. Bonin's car came to a stop after the accident on the west side of the street, the rear of her car being about 32 feet north of the place where the child was found, showing that the car had travelled 32 feet plus its length beyond the place where the child came to rest. Skid marks on the street showed that the Bonin car had skidded about 6 feet immediately before coming to a stop after the accident, but apparently the brakes were not applied with sufficient force to cause the car to skid before the collision. Hopkins Street at that point is a two-way street 30.5 feet wide.
The defendant's sister and five small children were in the car with her at the time of the accident. Mrs. Bonin testified that she did not see Darlene until the moment the collision occurred, that the impact caused one of her infant children to be thrown to the floor of her car, so she "stopped the car," put the baby back on the seat and then proceeded to park on the west side because, she explained, "I was closer to the left side of the street than I was to the right so I just continued to the left."
The child and the items which she was carrying were found 45 feet northwest of the point where Mrs. Bonin says the accident occurred, and she could give no explanation as to how the child's body could have been knocked or carried that distance and then come to rest on the opposite side of the street, particularly since the child was not run over by the car and her body was not thrown into the air over the hood of the car.
The trial judge concluded that the accident occurred near the curb of the west side of the street, as described by Darlene, that Mrs. Bonin was not maintaining a proper lookout, and that her negligence was the sole proximate cause of the accident. We think the evidence supports that conclusion.
The trial judge also concluded that Darlene was free from contributory negligence. We are aware of the established jurisprudence to the effect that where a pedestrian of normal intelligence and possessing normal senses of sight and hearing suddenly appears from behind a parked vehicle and enters the roadway, without looking to see if any traffic is coming, he is guilty of negligence. Martin v. American Heating & Plumbing Co., La.App.Orl., 52 So.2d 93; Montgomery v. Louisiana Power & Light Company, La.App. 2 Cir., 84 So.2d 268. The evidence in this case, however, shows that Darlene did look for approaching traffic before proceeding to cross, and seeing none she started to walk across the street. She had walked a distance of at least 45 feet in a northwesterly direction, while endeavoring to cross the street diagonally, and had almost reached the other side before she was struck. She testified *455 that she did not run, but merely walked while crossing, and considering the fact that the Bonin car was travelling at a greater speed than the child walked, it is apparent that the car was a considerable distance from Darlene when she started to cross. Under those circumstances, we think Darlene could reasonably have concluded that it was safe for her to enter the street. Also, after reaching a point almost across the street, we think the child reasonably could assume that a northbound car would not leave its proper lane of traffic and strike her on the extreme western side of the southbound lane, as did Mrs. Bonin in this case. We think the trial judge correctly held that the child was free from contributory negligence, and that plaintiff is entitled to recover for the damages sustained as a result of this accident.
The injuries which Darlene sustained consisted of a fracture of a left rib, 10 per cent collapse of the left lung, fracture of the left scapula or shoulder blade, compound comminuted fracture of the left humerus, comminuted fracture of the left femur, fracture of the transverse process of the first, second and third lumbar vertebrae, a relatively mild cerebral concussion, and cuts on her upper lip and chin. She was hospitalized for a period of 47 days immediately following the injury, during which time her arm and leg were placed in traction and she was placed in a body cast. She remained in a body cast for six weeks or two months after leaving the hospital, and thereafter she used crutches for about two months. In order to apply traction to her left leg it was necessary to put a steel pin through the tibia of that leg.
The child had recovered normally from most of her injuries by the time of the trial, which took place almost three years after the accident occurred, but the following residual effects of the accident are still present: The calf of her left leg is somewhat smaller than the right, she complains of pain in her back, and keloid scars have formed on her lip and chin where she sustained lacerations. The scar on her upper lip is round and is about three-eighths of an inch in diameter, and the scar on her chin is about one inch long and one-half inch wide. The keloid formations on these scars have been growing and are continuing to grow larger, and the scars are disfiguring. The treating physician recommends that the keloid growth be removed by surgery, and although that appears to be a relatively minor surgical proceeding, some facial scars will be left even after that surgery is performed. It appears that she eventually will recover completely from her leg injury, but the doctors cannot state when or if her back pain will subside.
The trial judge concluded that an award of $10,000.00 to plaintiff, for the use and benefit of his daughter, would be adequate. Plaintiff contends, however, that the award should be increased. Considering the nature of the injuries which Darlene received, and particularly the permanent nature of the facial scars, we think the award for the use and benefit of the child should be increased to $15,000.00.
No issue is raised in this appeal as to the quantum of the award made to plaintiff, individually, as special damages.
The liability of the defendant insurer in this case is limited by the terms of the policy to the principal sum of $5,000.00, and the trial court condemned the insurer, solidarily with the insured, to pay that entire amount to plaintiff for the use and benefit of his daughter. The defendant insurance company was not condemned to pay any part of the award made to plaintiff, individually. We think the court erred in failing to apportion the amount owed by that defendant to the two claimants. In our opinion, the total amount due by the insurer should be prorated between the claimants so that each may be entitled to receive that proportion of the amount for which the insurer is liable which his claim bears to the total sum awarded to both. Gaines v. Standard Acc. Ins. Co., La.App. 1 Cir., 32 So.2d 633 (Cert. denied); Futrell v. Pacific *456 Indemnity Company, La.App.Orl., 79 So.2d 903; Poirrier v. Audubon Insurance Co., La.App. 1 Cir., 120 So.2d 90; Smith v. Northern Insurance Company of New York, La.App.Orl., 120 So.2d 309 (Cert. denied).
According to our figures, plaintiff, for his individual account, is entitled to recover from defendant insurer 2045/17045 of the $5,000.00 maximum liability, or $599.88. Plaintiff, for the use and benefit of his child, is entitled to recover from said insurer 15000/17045 of the $5,000.00 maximum liability, or $4,400.12.
The judgment appealed from will be amended to conform to the views herein expressed. We have decided to recast the judgment to read as follows:
"It is ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiff, Robert Younger, individually, and against defendants, Jeanette D. Bonin and Lumbermens Mutual Casualty Company, in solido, for the principal sum of $2,044.85 (the liability of Lumbermens Mutual Casualty Company being limited to only $599.88 of said principal amount), together with interest thereon at the rate of 5 per cent per annum from date of judicial demand until paid.
"It is further ORDERED, ADJUDGED and DECREED that judgment be rendered herein in favor of plaintiff, Robert Younger, for the use and benefit of his minor child, Darlene Younger, against defendants, Jeanette D. Bonin and Lumbermens Mutual Casualty Company, in solido, for the principal sum of $15,000.00 (the liability of Lumbermens Mutual Casualty Company being limited to only $4,400.12 of said principal amount), together with interest thereon at the rate of 5 per cent per annum from date of judicial demand until paid.
"It is further ORDERED, ADJUDGED and DECREED that defendants, Jeanette D. Bonin and Lumbermens Mutual Casualty Company, in solido, be and they are hereby condemned to pay all costs of this suit, including the costs of this appeal."
The judgment appealed from, as herein amended and recast, is affirmed.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.